**IT IS ORDERED as set forth below:**

**Date: April 17, 2020**

_Wendy L. Hagenau_

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-60610-WLH |
| ROGER LEWIS DOWD, | CHAPTER 7 |
| Debtor. | |
| DYNOMITE MARKETING, LLC, | ADVERSARY PROCEEDING NO. 18-05006-WLH |
| Plaintiff, | |
| v. | |
| ROGER LEWIS DOWD, | |
| Defendant. | |

1

## <u>ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

This matter is before the Court on the Plaintiff's Motion for Partial Summary Judgment on its §§ 523(a)(2) & 523(a)(6) Claims [Doc. No. 67] ("Motion"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I).

Dynomite Marketing, LLC ("Dynomite") alleges that Debtor Roger Dowd ("Dowd" or "Debtor") engaged in a pattern of actual fraud to prevent Dynomite from recovering on a judgment against Reach Media, LLC, ("Reach") a company owned and controlled by Dowd. Dowd's acts allegedly create a claim against Dowd personally, and Dynomite alleges that claim is nondischargeable. Moreover, Dynomite argues Dowd is estopped from relitigating the issue of his fraud by the principles of collateral estoppel.

For the reasons given below, the Court denies Dynomite's Motion.

### <u>Procedural Background</u>

Dowd filed bankruptcy under Chapter 7 of the United States Bankruptcy Code on June 15, 2017. Dynomite filed this complaint on January 5, 2018, objecting to the dischargeability of its claim under 11 U.S.C. §§ 523(a)(2) and 523(a)(6) and objecting to the Debtor's discharge in total under 11 U.S.C. §§ 727(a)(2)(A) and (a)(4). In connection with this Motion, Dynomite filed a Statement of Undisputed Facts, the Affidavit of Douglas Dean, as Amended, the Depositions of Roger Dowd, James Dowd and Stacie D. Seamann, the transcript of Roger Dowd's 341 meeting, a SunTrust Bank subpoena, Wells Fargo Bank Dowd Fuller accounts, Wells Fargo Bank PMC accounts, Defendant's Response to Plaintiff's Request for Production of Documents, and Defendant's Response to Interrogatories. Dynomite contends it is entitled to summary judgment that its claims are nondischargeable under Section 523 either on the basis of collateral estoppel

2

and the Fulton County Default Judgment (as defined below) or because all the facts as demonstrated by the filed materials are undisputed and demonstrate that Dynomite is entitled to judgment as a matter of law.

Dowd submitted a response to Dynomite's Statement of Undisputed Material Facts [Doc. No. 93-1]. Dowd contends generally that collateral estoppel does not apply and no claim has been established against him.  He also contends that any liquidation of Reach's assets generated minimal if any funds which were used to pay Reach's obligations so no fraudulent conveyance claim can be asserted against him. Finally, he contends the liquidation of his personal assets should not be in issue since Dynomite does not have a claim against him and in any event, he liquidated his personal assets because he lacked income and to deal with a divorce.

### Undisputed Facts

Dowd was at all pertinent times the sole member and owner of Reach which was formed in 2011.  On February 10, 2014, Dynomite obtained a default judgment against Reach in the Superior Court of Crisp County, Georgia, in the amount of $39,070.67 plus interest ("Reach Judgment").   At the time, Reach was a defendant in other suits including a class action and subject to other judgments.

In November 2013, Dowd filed a UCC-1 asserting a security interest in Reach's assets. Dowd contends this was to evidence his capital contributions to Reach, but prior to the filing of the UCC-1, Reach and Dowd had never executed a loan agreement or a security agreement granting Dowd a security interest in Reach's property. Dowd acknowledges the UCC-1 was filed to allow him to recoup his investments in Reach before Reach paid other creditors.  In late 2013, Dowd liquidated Reach's assets.  Dowd describes this process as a "foreclosure" of his interest in Reach. Though Dowd disputes that the money came from the foreclosure of Reach, Dowd

transferred $50,000 to a joint account he owned with Marie Fuller (his girlfriend) on February 25, 2014 (only two weeks after the Reach Judgment).  He transferred $13,000.00 to the same joint account on February 27, 2014. In the five months following these transfers, Dowd made multiple large cash and check deposits to the joint account totaling $138,200.88.

Dowd also owned and controlled Performance Management Consultants, LLC ("PMC"). PMC was formed in August 2013.  On February 26, 2014 (only 2 weeks after the Reach Judgment), PMC deposited $39,312.00 into its account with Wells Fargo. Until Wells Fargo closed the account in August 2014, $69,800.41 was deposited in the account after the Reach Judgment.  All checks deposited into the PMC account were made out to Reach Prime or to PMC doing business as Reach Prime.

In September 2015, Dowd gave $35,000.00 to his sister, Stacie D. Seamann. Seamann wired money to Dowd as he requested. By New Year's Day 2016, Dowd had withdrawn all the $35,000.00 he had given to Seamann to hold on his behalf.

In 2007, Dowd purchased an approximately 130-acre property on Garr Road in Jackson, Georgia. The purchase price for the property was $1.2 million. Dowd paid approximately $800,000.00 in cash and financed the remainder of the transaction. In June 2012, after a fire destroyed the home on the property, Dowd used $800,000.00 in insurance proceeds he received as a result of the fire to pay the balance of the mortgage on the home. Afterward, Dowd owned the Garr Road property free and clear of any encumbrances and Dowd retained approximately $500,000.00 in insurance proceeds. In October 2014, Dowd transferred his interest in the Garr Road property to an entity called Garr Road, LLC which Dowd owned and controlled. On December 17, 2015, Dowd sold the Garr Road property for $162,000.00. Dowd paid his ex-wife

$80,000.00 of the proceeds in accordance with his divorce decree and retained the balance of the proceeds.

James Dowd (Debtor's stepfather) bought property in Griffin, Georgia on July 31, 2009. On the same day, James Dowd executed a warranty deed to himself and the Debtor as joint tenants. On January 12, 2016, the Debtor executed a Quitclaim Deed re-conveying his interest in the Griffin Property to James Dowd for no consideration.[1]

Beginning in 2015, Dowd engaged an auction company, Ahlers & Ogletree, to sell his personal assets, including valuable pieces of artwork, antiques, and collectibles. Between March 2015 and March 2018, Dowd liquidated over 200 pieces for approximately $125,500.00. Those pieces include signed Andy Warhol prints, Peter Max originals, Roy Lichtenstein lithographs, a "French serpentine commode", Anthony Thieme originals, Robert Henri originals, and World War II German antiques. Dowd, through Ahlers & Ogletree, sold nearly $40,000 in assets in the year prior to Dowd filing his bankruptcy petition, including one sale that took place the day before Dowd filed his petition. His liquidation continued even after the petition was filed, since he auctioned $5,000.00 in art and antiques between August 2017 and March 2018.

In June 2015, Dowd deposited $359,417.40 into a SunTrust account he owned and controlled. In 2016, prior to closing the account in July, Dowd made $49,007.52 in deposits into that account. Throughout this time, Dowd made large cash withdrawals and large purchases from eBay.

On October 22, 2015, Dynomite filed an action against Dowd and other defendants in the Superior Court of Fulton County ("Fulton County State Court Litigation"). In the complaint, Dynomite sought, as to Dowd, to pierce Reach's corporate veil and assign personal liability to

---

[1] The Chapter 7 Trustee brought an adversary proceeding against James Dowd to recover the Debtor's interest in the Griffin Property at AP No. 19-5230. This matter has been resolved by the Chapter 7 Trustee.

Dowd on account of the Reach Judgment, and to avoid the transfer of various items of property of Reach and/or Dowd both as a constructive fraudulent conveyance and as an actual fraudulent conveyance under the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70. Dynomite also sought punitive damages and attorney's fees pursuant to O.C.G.A. § 9-15-14 and/or O.C.G.A. § 13-6-11.

Dowd filed an answer in the Fulton County State Court Litigation. Dynomite later filed a motion to compel discovery pursuant to which the court entered an order on November 18, 2016, awarding Dynomite $8,142.00 in attorney's fees and $26.66 in expenses. The court ordered the production of certain documents and other discovery responses. Dowd failed to respond to the discovery requests or otherwise comply with the court's order. The court therefore entered an order on April 14, 2017 sanctioning Dowd for his continued lack of responsiveness, striking Dowd's answer and entering a default judgment against Dowd (the "Fulton County Default Judgment"). The Fulton County Default Judgment awarded damages to Reach in the liquidated amount of $46,302.75 based on sums pled in the complaint, and awarded punitive damages and attorney's fees, in amounts to be determined by the court at a subsequent hearing. The Fulton County Default Judgment stated that it would become final within seven days of its entry unless Dowd or the other defendants requested a hearing in writing.  No allegations have been made that such a hearing was requested.

Although Dowd filed bankruptcy on June 15, 2017, the Fulton County court proceeded with a hearing on June 16, apparently unaware of the bankruptcy filing. The court awarded Dynomite $94,407.17 in attorney's fees and expenses (which included the $8,142.00 in attorney's fees awarded in the first discovery sanction) and $250,000.00 in punitive damages.

**Disputed Facts**

While the foregoing facts are undisputed, Dowd points to evidence, including his own affidavit submitted in connection with his response which disputes other relevant facts. He asserts that the "liquidation" of Reach's assets only generated $2200 from the tangible property which was used in closing expenditures and another approximately $70,000 in business receivables which, when collected, were used to pay business expenses.  He also disputes that the money deposited in the account with Marie Fuller was derived from Reach assets, and claims it was from his own personal assets or subsequent business ventures. He also claims the funds deposited into the account of PMC were either income from a new venture (and not from Reach's assets) or were from personal asset liquidation.  He contends that all of Reach's assets were used to pay Reach's business obligations and not to evade collection from Dynomite. Finally, he states that the liquidation of his personal assets was done to provide for his living expenses since he was without a job and to pay amounts due under a divorce decree.

**Conclusions of Law**

*Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v.

Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The party moving for summary judgment has "the initial responsibility of informing the … court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp., 477 U.S. at 323). What is required of the moving party, however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

> When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim' (cites omitted) in order to discharge this 'initial responsibility'. Instead, the moving party simply may 'show – that is, point out to the … court – that there is an absence of evidence to support the nonmoving party's case. (cites omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Four Parcels of Real Prop., 941 F.2d at 1437-38 (citing Celotex, 477 U.S. at 323-31).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. See Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

### *Dischargeability*

Exceptions to discharge are narrowly construed and the burden is on the creditor to prove nondischargeability by a preponderance of the evidence. Duncan v. Bucciarelli (In re Bucciarelli),

429 B.R. 372, 375 (Bankr. N.D. Ga. 2010). Dynomite alleges its claim is nondischargeable under Section 523(a)(2)(A). Section 523(a)(2)(A) excepts from discharge claims for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by… false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition …" 11 U.S.C. § 523(a)(2)(A). The traditional elements of common law fraud apply to Section 523(a)(2)(A) claims. Wells Fargo Bank, N.A. v. Farmery (In re Farmery), 2014 WL 2986630, at *1 (Bankr. N.D. Ga. Apr. 11, 2014) (citing Field v. Mans, 516, U.S. 59, 70 n.9 (1995)). "Thus, to except a debt from discharge under Section 523(a)(2)(A), a creditor must prove: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the plaintiff sustained a loss as a result of the misrepresentation." Farmery, 2014 WL 2986630, at *1 (citations omitted). A claim for actual fraud is broader than a claim for false representation. In re Alam, 314 B.R. 834, 840 (Bankr. N.D. Ga. 2004). Actual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent or cheat another." Id. (citations omitted).

Dynomite also contends its claim is nondischargeable under Section 523(a)(6). A debt is nondischargeable under Section 523(a)(6) if it arises from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). A creditor proves willfulness by establishing the debtor engaged in "an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012) (citations omitted). The purpose of the act must be to cause injury. Id. "'Malicious' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" Id. (citation omitted). But the debtor, through his

9

acts, must have actually intended the <u>injury</u>, "not merely a deliberate or intentional <u>act</u> that leads

to injury." <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61 (1998) (emphasis in original). The plaintiff must

show the debtor "had a subjective motive to inflict injury or believed his conduct was substantially

certain to cause injury." <u>Hot Shot Kids, Inc. v. Pervis (In re Pervis)</u>, 512 B.R. 348, 376

(Bankr.N.D.Ga. 2014).   The debtor's subjective intent may be inferred from surrounding

circumstances. <u>Id</u>.

### *Preclusiveness of State Court Judgment*

Dynomite argues that collateral estoppel prevents Dowd from relitigating the matters

determined in the Fulton County State Court Litigation. Dynomite contends that the judgment

entered against Dowd in the liquidated amount of $46,802.75 and the judgment for punitive

damages and attorney's fees are binding on Dowd and sufficient as a matter of law to except the

claim from discharge. Dowd disputes the collateral estoppel effect of the Fulton County Default

Judgment.

The doctrine of collateral estoppel seeks "to prevent the re-litigation of issues previously

contested and determined by a valid and final judgment in another court." <u>Newton v. Lemmons

(In re Lemmons)</u>, 2005 WL 6487216, at *2 (Bankr. N.D. Ga. Dec. 20, 2005). The doctrine of

collateral estoppel applies to nondischargeability proceedings. <u>See</u> <u>Grogan v. Garner</u>, 498 U.S.

279, 284 n.11 (1991). "The Full Faith and Credit Act, 28 U.S.C. § 1738 . . . requires the federal

court to 'give the same preclusive effect to a state-court judgment as another court of that State

would give.'" <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 293 (2005) (quoting

<u>Parsons Steel, Inc. v. First Ala. Bank</u>, 474 U.S. 518, 523 (1986)). "A bankruptcy court may not

apply collateral estoppel to 'the ultimate issue of dischargeability,' but 'it may utilize[] issue

preclusion to reach conclusions about facts that the court would then consider as evidence of

nondischargeability'" <u>Hinton v. Blocker (In re Blocker)</u> 2020 WL 247311, *3 (Bankr. N.D.Ga.

Jan. 15, 2020)(citing <u>CC Fin., LLC v. Harvey (In re Harvey)</u>, 2017 WL 432788, *2 (Bankr.

N.D.Ga. Jan. 31, 2017)).

     This Court must, therefore, turn to Georgia law to determine the preclusive effect of the

Fulton County Default Judgment against Dowd. <u>See</u> <u>Hebbard v. Camacho (In re Camacho)</u>, 411

B.R. 496, 501 (Bankr. S.D. Ga. 2009). Under Georgia law, collateral estoppel applies when the:

(1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final

litigation of the issue in question occurred; (4) adjudication was essential to the earlier action; and

(5) parties had a full and fair opportunity to litigate the issues in question. <u>In re Lowery</u>, 440 B.R.

914, 922 (Bankr. N.D. Ga. 2010).

     Of particular importance in this case is the question of whether the issue was actually and

finally litigated. "Georgia case law does not disclose any analytical framework for determining

whether a matter was actually litigated. However, 'as a general rule, when a question of fact is put

in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined,

that question of fact has been 'actually litigated.'" <u>Lusk v. Williams (In re Williams)</u>, 282 B.R.

267, 272 (Bankr. N.D. Ga.2002) (citing 18 James Wm. Moore, et al., Moore's Federal Practice ¶

132.03[2][c] (3d. ed. 1999)). Georgia law recognizes a default judgment as a judgment on the

merits entitled to preclusive effect. <u>Matter of Graham</u>, 191 B.R. 489, 495 (Bankr. N.D. Ga. 1996)

(citing <u>Butler v. Home Furnishing Co.</u>, 163 Ga. App. 825, 825–26 (1982); <u>Fierer v. Ashe</u>, 147 Ga.

App. 446 (1978)). "A judgment by default properly entered against parties sui juris operates as an

admission by the defendant of the truth of the definite and certain allegations and fair inferences

and conclusions of fact to be drawn from the allegations of the declaration." <u>Spooner v. Deere</u>

<u>Credit, Inc.</u>, 244 Ga. App. 681, 682 (2000); <u>McKelvey v. Murray (In re Murray)</u>, 2009 WL

6527593, *2 (Bankr. N.D. Ga. Sept. 18, 2009) (citing Graham, 191 B.R. 489). The Fulton County

Default Judgment was actually litigated.  Dowd filed an answer and had an opportunity to defend

the action.  He also had an opportunity to and did oppose the motion for contempt and motion to

strike his answer.  He participated in that litigation but he lost due to his own actions.  This is

sufficient to satisfy the "actually litigated" requirement.

The judgment must also be final.  The Georgia Court of Appeals has ruled "a judgment is

not final unless 'it disposes of the entire controversy, leaving nothing for the trial court to do in

the case.'" Rapid Taxi Co. v. Broughton, 244 Ga. App. 427, 428 (2000) (citing Atlanta J's v.

Houston Foods, 237 Ga. App. 415, 418 (1999); Vangoosen v. Bohannon, 236 Ga. App. 361, 363

(1999) (order that "leaves the case pending in the trial court" is not a final judgment)). A judgment

as to less than all the claims in a case is not final.

> [A]ny order or other form of decision, however designated, which adjudicates fewer
> than all the claims or the rights and liabilities of fewer than all the parties shall not
> terminate the action as to any of the claims or parties. Such an order is subject to
> revision throughout the rest of the proceeding and until the entry of judgment
> adjudicating all the claims and rights and liabilities of all the parties. In other words,
> such an order is held in abeyance in the sense that it is neither final nor subject to
> appeal.

1 Georgia Civil Practice § 7.01 (2019). See Wise v. Georgia State Bd. for Examination,

Qualification & Registration of Architects, 244 Ga. 449, 449 (1979) (citing Walker v. Robinson,

232 Ga. 361 (1974)) ("The entry of a judgment as to one or more but fewer than all of the claims

. . . is not a final judgment . . . and lacks res judicata effect unless the trial court makes an express

direction for the entry of the final judgment and a determination that no just reason for delaying

the finality of the judgment exists."). This is also true with respect to default judgments. The

Georgia Code, O.C.G.A. § 9-11-55(b), states that "[a]t any time before final judgment, the court,

in its discretion, upon payment of costs, may allow the default to be opened for providential cause

preventing the filing of required pleadings or for excusable neglect or where the judge, from all

the facts, shall determine that a proper case has been made for the default to be opened, on terms

to be fixed by the court." In instances in which a default judgment is entered as to liability, but the

damages have not been set, the default is not considered final, as it leaves more for the court to do.

Rapid Taxi Co., 244 Ga. App. at 428; Griffin v. Rutland, 259 Ga. App. 846, 847-48 (2003).

      The court may nevertheless direct the entry of a final judgment as to one or more, but fewer

than all, of the claims or parties pursuant to O.C.G.A. § 9-11-54(b):

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

 (emphasis added). Accordingly, a judgment as to less than all the claims is res judicata only "upon

the express determination that there is no just reason for delay[ing]" the entry of judgment.

Cryomedics, Inc. v. Smith, 180 Ga. App. 336, 338 (1986). But, "O.C.G.A. § 9-11-54(b) cannot be

used to bifurcate the same claim into two issues---liability and damages---so as to transform a

ruling strictly on the issue of liability into a final judgment, representing final judicial action and

the vesting of rights." Id.   Rule 54 addresses judgments as to claims or parties, not as to issues.

      The Fulton County Default Judgment does not resolve all claims in the case. It ordered

default judgment be entered "against each Defendant individually for the liquidated damages

amount pled in Plaintiff's Second Amended Complaint of $46,302.75, and for attorney's fees and

punitive damages related to the above-captioned action in an amount to be established at a hearing

pursuant to O.C.G.A. § 9-11-55, plus post-judgment interest at the legal rate." While it assesses liability and actual damages on the complaint and <u>liability</u> for attorney's fees and punitive damages, it does not assess <u>the amount</u> of attorney's fees or damages

The later hearing to establish the amount of attorney's fees and punitive damages occurred the day after Dowd filed bankruptcy and thus was stayed. Actions in violation of the stay are void, <u>Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)</u>, 749 F.2d 670, 675 (11th Cir. 1984), so the order awarding attorney's fees and punitive damages is void. Therefore, the claim against Dowd for attorney's fees and punitive damages is not fully resolved and provides no basis for collateral estoppel in this Court. <u>Sotter v. Stephens</u>, 291 Ga. 79 (2012) (a judgment that reserves the amount of damages or attorney's fees is not a final judgment); <u>Bourff v. Green Tree Servicing, LLC</u>, 321 Ga. App. 320, 322 (2013) (order was not final because the amount of damages and award of attorney's fees remained pending).

Because all the claims were not resolved in the Fulton County Litigation, the Fulton County Default Judgment is not final unless the court complied with O.C.G.A. § 9-11-54. Notably, the Fulton County Default Judgment makes no reference to O.C.G.A. § 9-11-54. It also does not make any express finding that final judgment should be entered on the liquidated claim because there is no just reason for delay. The Fulton County Default Judgment states that it will become final within seven days of entry if no objections are filed, but this does not mean a final judgment has been entered for purposes of collateral estoppel. Under the express language of O.C.G.A. § 9-11-54, the mere designation of a judgment as "final" is not controlling. <u>Rhymes v. E. Atlanta Church of God, Inc.</u>, 284 Ga. 145 (2008). In <u>Rhymes</u>, the Georgia Supreme Court overruled prior court of appeals authority suggesting that a mere designation of a judgment as "final" was sufficient. <u>Id</u>. at 147. ("To the extent that <u>Re-Max [Execs. v. Wallace</u>, 205 Ga. App. 170 (1992)] …holds that the

designation of a judgment as 'final' is controlling, it is hereby overruled."). See also Whiddon v. Stargell, 192 Ga. App. 826 (1989); Hadid v. Beals, 233 Ga. App. 5 (1998) (where the trial court's order was "devoid of any such express determination" under Rule 54, it was not final).  Even more recently in Sotter, the Georgia Supreme Court stated, "the titling of an order as final does not equate to an express determination that there was no just reason for delay and an express direction for the entry of final judgment under O.C.G.A. § 9-11-54(b)". 291 Ga at 83.  The Fulton County Default Judgment contains no express determination as required by O.C.G.A. § 9-11-54(b) and so it is not final and provides no basis for collateral estoppel. It is therefore necessary for Dynomite to establish in this case that it holds a claim against Dowd and that the claim is nondischargeable.

*Nondischargeability under 11 U.S.C. § 523(a)*

Having determined collateral estoppel does not apply, the Court will consider whether Dynomite is entitled to summary judgment based on the totality of the undisputed facts. Determining the dischargeability of a debt under Section 523 involves two steps. The first step is to determine whether a debt exists. If the debtor owes a debt to the plaintiff, the second step is to determine the nature of the debt—i.e. whether it is dischargeable or nondischargeable. In re Willoughby, 2017 WL 3741256, at *3 (Bankr. N.D. Ga. Aug. 30, 2017) (citing Hatfield v. Thompson (In re Thompson), 555 B.R. 1, 8 (10th Cir. BAP 2016); Stanbrough v. Valle (In re Valle), 469 B.R. 35, 43 (Bankr. D. Idaho 2012)). For Dynomite to meet the summary judgment standard, therefore, the undisputed facts and applicable law must establish both (1) Dowd owes a debt to Dynomite and (2) the debt is nondischargeable under Section 523(a)(2)(A) or (a)(6).

"The establishment of the debt is determined through the adjudication of the underlying claim under applicable nonbankruptcy law." Van-Voegler v. Myrtle (In re Myrtle), 500 B.R. 441, 450 (Bankr. W.D. Va. 2013) (citing In re Valle, 469 B.R. at 43); see also Raleigh v. Ill. Dep't of

_Revenue_, 530 U.S. 15, 20 (2000) (stating that "[t]he 'basic federal rule' in bankruptcy is that state law governs the substance of claims") (quoting _Butner v. United States_, 440 U.S. 48, 57 (1979)). While it is undisputed that Reach owes Dynomite a debt as a result of the Reach Judgment, Dowd argues he is not personally liable for that debt. Dynomite argues that because Dowd engaged in a series of fraudulent transfers to prevent Dynomite from recovering on the Reach Judgment, and because such conduct constitutes actual fraud, the debt owed by Dowd to Dynomite is nondischargeable. This, however, skips the first necessary step as Dynomite has not yet established that a debt is owed by Dowd.

In the Fulton County State Court Litigation, Dynomite's claims against Dowd were based on piercing the corporate veil, constructive fraudulent conveyance (O.C.G.A. §§ 18-2-74 (a)(2) and 18-2-75 (a)), insider preference (O.C.G.A. § 18-2-75(b)),  and actual fraudulent conveyance (O.C.G.A. § 18–2–74(a)(1)).   In this Motion, however, Dynomite only argues for summary judgment based on actual fraudulent conveyances. Dynomite's remaining theories of recovery can be addressed at trial but are not addressed here.

Under the Georgia Uniform Fraudulent Transfers Act[2], transfers made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" are fraudulent. O.C.G.A. § 18–2–74(a)(1). If a transfer is voidable, "the creditor may recover judgment for the value of the asset transferred, as adjusted [for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require], or the amount necessary to satisfy the creditor's claim, whichever is less." O.C.G.A. § 18-2-78(b)(1). The judgment can be against "the first transferee of the asset or the person for whose benefit the transfer was made" or "[a]ny subsequent transferee

---

[2] The Georgia Uniform Fraudulent Transfers Act was replaced by the Georgia Uniform Voidable Transactions Act on July 1, 2015. The Court cites the Georgia Uniform Fraudulent Transfers Act, as it was in effect at the time Reach was liquidated in 2014 and thus any transfers made would be found voidable under it.

other than a good faith transferee or obligee who took for value or from any subsequent transferee or obligee." O.C.G.A. §§ 18-2-78(b)(1)-(2) (2002). For Dynomite to have a claim against Dowd in this case under O.C.G.A. §§ 18-2-78(b)(1)-(2), Dynomite must show that Reach conveyed its property with actual intent to hinder, delay or defraud Dynomite and that Dowd is the immediate or subsequent transferee or the person for whose benefit the transfer was made.

The elements of a claim for fraudulent transfer are: (1) a transfer; (2) of an interest of property of the debtor; (3) made with actual intent to hinder, delay, or defraud a creditor. In re Think Retail Sols., LLC, 2019 WL 2912717, at *11 (Bankr. N.D. Ga. July 5, 2019). The Georgia Uniform Fraudulent Transfers Act defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and includes payment of money, release, lease, and creation of a lien or other encumbrance." O.C.G.A. § 18-2-71(12). Furthermore, "asset" is defined as "property of a debtor[.]" O.C.G.A. § 18-2-71(2). In the context of this statute, the "debtor" is Reach, not Dowd because Dynomite holds a judgment against Reach, not Dowd.[3]

---

[3] Much of Dynomite's statement of undisputed facts and argument is about Dowd's disposition of his admittedly personal assets. Those facts and arguments are not relevant here. They may be relevant to Dynomite's argument that Dowd's discharge should be denied under Section 727(a)(2) as a fraudulent transfer within one year before the date of the filing of the petition or as an unauthorized post-petition transfer. But Dynomite's Section 727 claims are not part of this motion (and Dynomite must first establish it is a creditor in order to pursue a claim under Section 727). Dynomite argues it is entitled to a judgment against Dowd for the disposition of his personal assets, but that is in error. Dynomite must first establish a claim against Dowd before a claim for fraudulent conveyance of Dowd's personal assets becomes relevant. But, even then, since Dowd is a debtor in a chapter 7 case, fraudulent conveyance claims for disposition of Dowd's property belong to the trustee. "Cases denying standing to creditors attempting to recover property of the estate predate" the Bankruptcy Code and Act. In re Sunshine Precious Metals, Inc, 157 B.R. 159, 161 (Bankr. D. Idaho 1993) (holding claim for state law fraudulent conveyance is a general claim applicable to all creditors and not just the plaintiff) (citing Glenny v. Langdon, 98 U.S. 20 (1878)). "A trustee's avoidance powers, including those under Sections 547, 548 and 549 of the Bankruptcy Code, are unique statutory powers intended to benefit the estate, not a single creditor. Standing to assert actions under Sections 547, 548 and 549 to recover preferences and to set aside fraudulent conveyances and post petition transfers is limited to the trustee, and individual creditors have no standing to bring such actions except through the trustee or debtor in possession." In re McGuirk, 414 B.R. 878, 879 (Bankr. N.D. Ga. 2009) (citing In re Conley, 159 B.R. 323, 324 (Bankr. D. Idaho 1993); La. State Sch. Lunch Employees Ret. Sys. v. Legel, Braswell Gov't Sec. Corp., 699 F.2d 512, 515 (11th Cir. 1983) (stating that the right to set aside a voidable transfer is the trustee's personal right which cannot be exercised by a creditor); Syndicate Exch, Corp. v. Duffy (In re Pro Greens, Inc.), 297 B.R. 850, 855 (Bankr. M.D. Fla. 2003) (denying an individual creditor standing to bring an avoidance action)); see also Whirlpool Corp. v. CIT Group/Bus.

Both parties acknowledge that Reach's assets were liquidated.  But the facts are disputed as to the amount of the assets liquidated and the use of the funds.  Dowd contends only about $72,000 of Reach's assets were liquidated and that all such funds were used to pay Reach's expenses. Dowd states in his affidavit that the funds did not go to him personally and that the funds Dynomite claims went to Dowd were from other sources, not Reach's assets. The undisputed facts do not show which assets of Reach were transferred or to whom they were transferred.  The undisputed facts do not show the value of the assets transferred.  The undisputed facts do not show that Dowd was the recipient of Reach's assets or the person for whose benefit the transfers were made.

Moreover, the undisputed facts do not show that the transfers of Reach's assets were made with an actual intent to hinder, delay or defraud Dynomite. Courts recognize that direct proof of fraudulent intent is rarely available; therefore, it may be established by circumstantial evidence. Bishop v. Patton, 288 Ga. 600, 607 (2011) (disapproved on other grounds by SRB Inv. Servs., LLLP v. Branch Banking and Trust Co., 289 Ga. 1 (2011)); Dionne v. Keating (In re XYZ Options, Inc.), 154 F.3d 1262, 1271 (11th Cir. 1998). "O.C.G.A. § 18-2-74(b) sets forth a non-exclusive list of factors, or badges of fraud, for courts to consider in determining whether a transfer was made with the requisite intent." Think Retail Sols., LLC, 2019 WL 2912717, at *12 (citing In re XYZ Options, Inc., 154 F.3d at 1272). These factors include:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;

---

Cred., Inc. 258 F. Supp 2d 1140, 1146 (D. Hawaii 2003) (creditor did not have right to pursue fraudulent conveyance action as it is the "well established" right of the trustee to bring it); Richardson v. Todd Green, et al (In re THR & Assoc.), 2016 WL 3134653 *6 (Bankr. C.D. Ill. May 26, 2016) ("when a bankruptcy case has been filed, only the Chapter 7 trustee may prosecute fraudulent conveyance actions").  Dynomite cannot bring those claims personally and cannot obtain a judgment against Dowd for his disposal of his personal assets.

18

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

O.C.G.A. § 18-2-74(b). These factors "are treated as relevant evidence as to the debtor's actual intent, from which the finder of fact may draw an inference of actual intent to defraud." Bishop, 288 Ga. at 608 (citations omitted).

Many of the factors of O.C.G.A. § 18-2-74(b) could be relevant to this case. Dowd was an insider of Reach, but the undisputed facts are unclear as to what extent, if at all, he made transfers from Reach to himself for personal benefit, not for winding up purposes. See O.C.G.A. § 18-2-74(b)(1)-(2). Transfers were made to various accounts controlled by Dowd in the months surrounding the Reach Judgment, but the extent to which those transfers stemmed from monies originating with Reach is in dispute. See O.C.G.A. § 18-2-74(b)(4). Reach was insolvent or became insolvent as a result of its liquidation, but Dowd contends this was necessary in order to pay other creditors and closing expenditures. See O.C.G.A. § 18-2-74(b)(5). PMC used Reach's tradenames, but Dowd argues this was merely for "symbolic" purposes and to revive any remaining intellectual property value. Furthermore, Dowd asserts that the assets he liquidated from Reach using the UCC-1 consisted of approximately $2,200.00 of tangible property, which was used in closing expenditures, and about $70,000.00 in business receivables, which Dowd prioritized to pay lead directors who had directed profitable traffic. He also asserts that the above

19

transfers of money into other accounts or businesses controlled by him came from either his personal assets or subsequent business ventures.

Dynomite's reliance on <u>Husky Int'l Elecs., Inc. v. Ritz</u>, 136 S.Ct. 1581 (2016), to establish Dowd's liability is misplaced. Husky does not provide a basis for a personal claim against Dowd, but only holds that an established personal claim could be found nondischargeable under Section 523(a)(2)(A) if it arose as a result of a fraudulent conveyance scheme. The Supreme Court recognized that fraudulent conveyance schemes are compatible with the language of Section 523(a)(2). 136 S.Ct. at 1584. The Supreme Court was clear, however, that the existence of a fraudulent conveyance scheme in itself is insufficient for a finding of nondischargeability. <u>Id</u>. at 1589. Rather, "Section 523(a)(2) is only implicated when a plaintiff can prove that the debt in question was 'obtained by' the fraudulent conveyance scheme." <u>In re Robertson</u>, 576 B.R. 684, 715 (Bankr. N.D. Ga. 2017) (citing <u>Husky</u>, 136 S.Ct. at 1584). In <u>Husky</u>, the corporate principal had already been found personally liable to a creditor of the transferor through veil piercing under Texas law. The question presented to the Court was whether that debt could then be deemed nondischargeable as arising from actual fraud. The facts of this case are different. Dynomite has not yet established a claim against Dowd, as a result of veil piercing or fraudulent conveyance or otherwise.  Dynomite's argument is therefore unpersuasive to the Court at this time.

Genuine issues of material fact remain regarding Dowd's intent in liquidating Reach. The facts are also disputed as to whether Dowd was the recipient of the transfers from Reach and whether the transfers were made to benefit other creditors of Reach, not Dowd himself. For these reasons, summary judgment as to whether Dowd is liable to Dynamite under the Georgia Uniform Fraudulent Transfers Act is inappropriate.

## <u>Conclusion</u>

Dynomite contends that the various transfers made from Reach in the wake of the Reach Judgment constitute fraudulent conveyances, which in turn allow Dynomite to recover from Dowd. Dowd, however, has pointed to facts directly disputing the elements necessary to avoid the transfers under Georgia law, specifically the intent behind the transfers and the beneficiary of the transfers. Because those facts surrounding the transactions are essential to determine whether Dynomite has a claim against Dowd and are disputed, summary judgment is not appropriate. It is therefore,

**ORDERED** that Dynomite Marketing, LLC's Motion for Partial Summary Judgment is **DENIED**.

**ORDERED FURTHER** that the parties shall submit a joint proposed Pretrial Order in accordance with the Local Rules by June 15, 2020.

END OF ORDER